# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (Newark)

MELINDA FARINA, and
BEAUTY BROKERS – MELINDA
FARINA INCORPORATED,

                        Plaintiff,

v.

DANA ABED OMARI,

                        Defendant.

Civ. A. No.: 24-11098

**Hon. Susan D. Wigenton, U.S.D.J.**

**Hon. André M. Espinosa, U.S.M.J.**

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DANA OMARI'S MOTION TO DISMISS

---

**McCARTER & ENGLISH, LLP**
Daniella Gordon, 39372005
Kieran T. Ensor 305662019
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Phone: (973) 622-4444
dgordon@mccarter.com
kensor@mccarter.com

*Attorneys for Defendant*
*Dana Abed Omari*

Date:  April 1, 2025

ME1 52641101v.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................1

II. FACTUAL ALLEGATIONS ........................................................................4

    A.  Plaintiffs – Farina and Beauty Brokers ...............................................5

    B.  Omari .....................................................................................................5

    C.  The Amended Complaint, the Initial Complaint, and The Public
        Record ....................................................................................................8

III. ARGUMENT .............................................................................................11

    A.  Legal Standard for Evaluating Motion to Dismiss .............................11

    B.  The Amended Complaint Must Be Dismissed For Failure to
        State a Claim for Defamation or False Light, as Plaintiffs
        Target Protected Opinion Statements, Fail to Sufficiently Plead
        Falsity of Factual Statements, and Fail to Sufficiently Plead
        Actual Malice ......................................................................................13

        1.  Actual Malice Standard ...........................................................14

        2.  Plaintiffs Must Plead and Ultimately Prove Actual
            Malice Because They are Public Figures .................................17

        3.  Plaintiffs Fail to Adequately or Consistently Plead Actual
            Malice Throughout the Amended Complaint and Also
            Erroneously Plead a *Per Se* Standard for Liability. .................18

        4.  Plaintiffs' Claims for Punitive Damages Must be
            Dismissed. ................................................................................19

    C.  Plaintiffs Plead No Facts to Support the Notion that Omari
        "Entertained Serious Doubts" as to the Truth of Any of the
        Factual Statements Identified in the Amended Complaint. ................20

    D.  Plaintiffs Fail to State a Claim Upon Which Relief May be
        Granted As Their Claims Target Protected Opinion Statements

i

and They Fail to Plead Falsity (and Admit the Truth) of Factual Statements at Issue ...............................................................23

    1.    "She's just a dental hygienist" ................................24

    2.    Plaintiff "gets paid on both ends." ...........................26

    3.    "And allegedly gets kickbacks." ..............................28

    4.    "Basically people now pay $1,000 to have a consult with her so she can suggest one of these surgeons "Beauty Brokers' "Little Black Book" of surgeons." ...........................29

    5.    "Lots of surgeons I know have STORIES, and tons of my followers have sent in stories of her being super rude, canceling all the time and being late, not helpful, and having a hard time getting their money back if she messes up or doesn't provide the services promised." .............31

    6.    Melinda Farina is a bad person and bad business woman; that she scams a lot of people; and had a surgical procedure but never paid for it; among many other defamatory comments. ...............................................32

    7.    Plaintiffs Fail to Sufficiently Plead Damages...........................34

  E.    Plaintiffs Fail to State a Claim for Tortious Interference With Prospective Economic Advantage......................................................36

IV.  CONCLUSION..............................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*,
  332 F. App'x 787 (3d Cir. 2009)....................................................................30, 37

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ........................................................................15, 20

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...........................................................................15

*Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
  908 F.3d 872 (3d Cir. 2018) ..............................................................................14

*Dill v. Yellin*,
  725 F. Supp. 3d 471 (D.N.J. 2024)....................................................................37

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985)............................................................................................18

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998)......................................................................37

*Fenico v. City of Phila.*,
  70 F.4th 151 (3d Cir. 2023) ...............................................................................19

*Fuller v. Rozlin Fin. Grp., Inc.*,
  No. 19-20608, 2020 WL 5036215 (D.N.J. Aug. 26, 2020).........................15, 20

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)........................................................................................17, 25

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)..............................................................................17, 18, 19

*Harmon v. Borough of Belmar*,
  No. 17-2437, 2018 WL 6068216 (D.N.J. Nov. 20, 2018)..................................37

iii

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010) ...............................................................15

*New York Times v. Sullivan*,
   376 U.S. 254 (1964)...........................................................................17

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)................................................................17, 22, 23

*Zuber v. Boscov's*,
   871 F.3d 255 (3d Cir. 2017) ...............................................................14

**State Cases**

*Aristocrat Plastic Surgery, P.C. v. Silva*,
   206 A.D.3d 26 (2022) .........................................................................19

*Costello v. Ocean County Observer*,
   136 N.J. 594 (1994) .......................................................................17, 24

*DeAngelis v. Hill*,
   180 N.J. 1 (2004) ................................................................................23

*Glass v. Suburban Restoration Co.*,
   317 N.J. Super. 574 (App. Div. 1998)..................................................24

in *Sisler v. Gannett Co.*,
   104 N.J. at 279 (1986) ........................................................................18

*Lawrence v. Bauer Publ'g & Printing Ltd.*,
   89 N.J. 451 (N.J. 1982)..................................................................17, 21

*Leang v. Jersey City Bd. of Educ.*,
   198 N.J. 557 (2009) ............................................................................16

LoBiondo v. Schwartz,
   733 A. 2d 516 (App. Div. 1999)...........................................................18

*Marchiano v. Sandman*,
   178 N.J. Super. 171 (App. Div. 1981)..................................................24

*Neuwirth v. State*,
   476 N.J. Super. 377 (App. Div. 2023)............................................16, 24

iv

*Rocci v. Ecole Secondaire Macdonald-Cartier*,
    165 N.J. 149 (2000) ..................................................................................19, 25

*Romaine v. Kallinger*,
    109 N.J. 282 (1988) ................................................................................16

*Swan v. Boardwalk Regency Corp.*,
    407 N.J. Super. 108 (App. Div. 2009) ...............................................17

*Trump v. O'Brien*,
    422 N.J. Super. 540 (App. Div. 2011) ...............................................24

*Turf Lawnmower Repair v. Bergen Record Corp.*,
    139 N.J. 392 (N.J. 1995) ......................................................................19

*W.J.A. v. D.A.*,
    210 N.J. 229 (2012) ................................................................................22

**Rules**

Rule 12(b)(6) ..............................................................................14, 15, 26, 27

**Regulations**

N.J. Admin. Code § 13:35-6.17 ....................................................33, 34

**Constitutional Provisions**

First Amendment ..............................................................................18

**Other Authorities**

Beauty Broker website (https://www.thebeautybrokers.com/meet-the-
    beauty-broker) ....................................................................................29

British Medical Association, Medical Training Pathway
    (https://www.bma.org.uk/advice-and-support/studying-
    medicine/becoming-a-doctor/medical-training-pathway) ..................29

Cambridge Dictionary ....................................................................33

ME1 52641101v.1

*Coveteur*, January 11, 2022 (https://coveteur.com/the-beauty-broker-interview) ..............................................................................................28

*Hovsepian v. Integrated Aesthetics and Farina*,
Index No. 653300 ................................................................................10

https://www.instagram.com/beautybrokerofficial/?hl=en .........................................5

https://www.instagram.com/igfamousbydana/?hl=en .............................................6

https://www.linkedin.com/in/danaomarirdn .........................................................6, 7

https://www.realself.com/ ..............................................................................8

https://www.reddit.com/r/plasticsurgery101/comments/18eo5db/melin
da_farina_the_beauty_broker_little_black/?rdt=44184 ...................................36

https://www.thebeautybrokers.com/ ...................................................................28

https://www.thebeautybrokers.com/meet-the-beauty-broker ...................................5

*Industry Magazine*, July 24, 2017 (https://industrym.com/beauty-broker/?city=staten%20island) ........................................................................28

*Success Series*, Episode 9, at 15:30-17:22
(https://www.youtube.com/watch?v=FOarV2ax3YI) ......................................39

## I.    <u>INTRODUCTION</u>

Defendant Dana Omari ("Omari") files this Motion to Dismiss the Amended Complaint in this matter.  The Amended Complaint does not cure the defects in the initial Complaint.   To the contrary, the Amended Complaint targets opinion statements that are not actionable, and includes <u>admissions</u> that Plaintiffs have 1) proposed fee splitting and kickback schemes with doctors to whom they refer surgical patients, 2) accepted payments from doctors that are members of Plaintiffs' "referral network," and 3) received "lavish" gifts from doctors in "appreciation" for Plaintiffs' referrals.   These admissions are not merely troublesome in and of themselves, they contradict Plaintiffs' core claims.   They also reveal that the averments in the initial Complaint, in which Plaintiffs swore that "*at no times*" have they been paid by the doctors to whom they refer clients, were false.

Plaintiffs Melinda Farina ("Farina") and Beauty Brokers – Melinda Farina Inc. ("Beauty Brokers") (collectively "Plaintiffs") operate a surgical referral business. Under their current, claimed business model, Plaintiffs collect fees from patients that are seeking cosmetic surgery in exchange for Plaintiffs' referrals to cosmetic surgeons within Plaintiffs' exclusive network. *See e.g.*, Amended Complaint at ¶ 10; 38 (citing Beauty Brokers website).

The Complaint against Omari states claims for: 1) defamation, 2) false light [invasion of privacy], and 3) tortious interference with prospective economic

advantage. The core of the Amended Complaint stems from a single social media post that Omari made in November of 2024 (the "Post"). The Post contains various statements and opinions regarding Plaintiffs' receipt of simultaneous compensation from patients and surgeons, Plaintiffs' "alleged" receipt of "kickbacks," and other parties' opinions about Plaintiffs' demeanor and lack of professionalism. Amended Complaint at ¶ 41.

The pleading standards for claims of defamation, false light, and tortious interference with prospective economic advantage are well-established. When an alleged defamatory statement or claim for false light invasion of privacy relates to a "matter of public concern," or concerns a "public figure," it is subject to an "actual malice" standard. That means that the plaintiff must plead and ultimately prove that a defendant made an alleged defamatory statement with actual knowledge of its falsity or reckless disregard for its falsity. Matters of "public concern" are also subject to an actual malice standard. Negligent publishing is not enough.

Similarly, claims for tortious interference with prospective economic advantage must also plead and prove "actual malice" on the part of the defendant. Such claims must also identify specific economic opportunities that were lost as a result of the defendant's conduct. Vague pleadings that refer to general or assumed business loss are insufficient.

2

The Amended Complaint targets statements that are 1) opinion, 2) are not defamatory, 3) are not false, and 4) are not made with actual malice. Plaintiffs attempt to bolster a commercial speech argument in order to implicate a negligence standard of proof; however, even if a negligence standard were in play, Plaintiffs would not meet pleading standards under the allegations presented.

Although a factual statement does not have to be "true" in order to be defensible under an "actual malice" standard, in this matter, each statement in the Post is corroborated by Plaintiffs' own admissions, documents incorporated by reference into the Amended Complaint, and public filings of which the Court may take judicial notice. These include:

- Plaintiffs' admissions, as set forth in the Amended Complaint, that Plaintiffs had a <u>fee arrangements under which doctors were asked to reduce their fee to patients by 10% so that Plaintiffs could charge that exact amount to their patients and retain the proceeds</u> for themselves;

- Plaintiffs' admissions, as set forth in the Amended Complaint, that <u>surgeons have paid Plaintiffs to be in Plaintiffs' surgical referral network</u>;

- Plaintiffs' admissions, as set forth in the Amended Complaint, in which Plaintiffs acknowledge <u>Farina's receipt of "lavish" (Plaintiffs' word choice) gifts from doctors to whom she refers patients</u>;

- <u>Two (2) prior lawsuits</u>, of which the Court may take judicial notice, against Farina and her businesses in which they are alleged to receive <u>simultaneous compensation from patients and doctors</u>, and in which they are alleged to <u>promise patient referrals in exchange for a fee</u>;

3

- Innumerable <u>negative public comments and opinions</u>, as cited by Plaintiffs, about Farina's services.

With respect to tortious interference with prospective economic advantage, Plaintiffs fail to satisfy the malice standard, which is required for all plaintiffs seeking to recover under this theory. Moreover, Plaintiffs fail to identify (much less connect) any actual lost business suffered a result of the Post. In fact, every unattributed quote that Plaintiffs cite in support of their lost business claim reveals that these alleged "lost clients" declined to engage Plaintiffs because of Farina's pro-MAGA political commentary, her "whackadoodle" Instagram posts, numerous bad reviews online, and other examples of Farina's own conduct.

## II.    <u>FACTUAL ALLEGATIONS</u>

Plaintiffs' claims stem from a single Instagram Post made by Omari in November of 2024. Amended Complaint at ¶ 41. In the Post, Omari writes about the seemingly conflicted nature of Plaintiffs' financial relationships with cosmetic surgeons, on the one hand, and patients, on the other hand, who consult with Plaintiffs for the purpose of receiving recommendations for cosmetic surgeons. *Id.* The Post states that Plaintiffs "allegedly get kickbacks." *Id.* The Post also includes a link to a Reddit forum post, created by another commentator, entitled "Beauty Broker's Little Black Book of Surgeons," which includes opinions by others regarding Plaintiffs' professionalism and quality of service. *Id.*

4

### A. **Plaintiffs – Farina and Beauty Brokers**

The Beauty Brokers website, which is incorporated into the Amended Complaint by reference, identifies Farina as the "Founder of Integrated Aesthetics Consulting Inc. and Beauty Brokers Inc. in 2004." Amended Complaint at ¶ 38 (quoting Plaintiffs' website) (https://www.thebeautybrokers.com/meet-the-beauty-broker). The website is ambiguous in its description of Farina's credentials. It states that she holds certain "licenses" and "certificates," and refers to "training with world renowned surgeons," *id.,* however, Farina does not allege that she holds any actual medical licenses or has any formal medical training outside of dental hygiene.

Plaintiffs maintain a self-titled Instagram page, @beautybrokerofficial. The Instagram page, like Plaintiffs' website, is incorporated by reference into the Amended Complaint. Amended Complaint at ¶ 26. (https://www.instagram.com/beautybrokerofficial/?hl=en). The Instagram page states Farina's full name at the header. It features a picture of Farina. *See* Certification of Daniella Gordon ("Gordon Cert") at Ex. A. It identifies her as a "**public figure**" and founder of Beauty Brokers, a "Top Global Aesthetics Consultancy." *Id.*

### B. **Omari**

Omari maintains an Instagram page, @igfamousbydana, where she discusses aesthetic trends, cosmetic procedures, possible cosmetic procedures that celebrities

5

have received, and her own experiences with cosmetic procedures and products, among other personal observations unrelated to aesthetics.

Omari's Instagram page is incorporated into the Amended Complaint by reference, as is Omari's LinkedIn profile. *See* Gordon Cert. at Ex. B, Amended Complaint ¶¶ 23, 31 (https://www.instagram.com/igfamousbydana/?hl=en); *Id.* ¶ 21 (https://www.linkedin.com/in/danaomarirdn).

Defendants spend the first 6 pages of the Amended Complaint attempting to set the stage for an argument that Omari is a "competitor" of Plaintiffs. However, the facts cited in the Amended Complaint do not support Plaintiffs' argument. *See* Gordon Cert. at Ex. B, Amended Complaint ¶¶ 16, 17 (ECF No. 14). Omari uses the undefined term quite differently from Plaintiffs.

On Omari's Linked in page, the title line of her current employment role indeed describes her as a self-employed plastic surgery/aesthetics consultant. *Id.* at ¶ 17. The longer description, however, elaborates on what is meant by that term. *Id.* at ¶ 21 (https://www.linkedin.com/in/danaomarirdn). Omari describes her work as including "content creation" (brand development), "consultant work" (educating doctors on patient consultations), and "media training" (preparing physicians for interviews and social media communication). *Id.* Under her name and picture is the title, "content creator and consultant," and the description:

> I am an experienced and data-driven, media-trained program
> coordinator with a natural ability for driving high social media

> engagement which converts to increased sales and revenue.  In my current role, I plan and coordinate events and entire seminars/conferences from start to finish. I create and present continuing education presentations for hundreds of people at a time. I also source, vet, and develop speakers' skills, message and presentation to align with my company's goals.  I am also a skincare, aesthetics and pop culture influencer. I've leveraged this platform and skillset into becoming a social media marketing consultant.

*Id.* (https://www.linkedin.com/in/danaomarirdn).

Contrary to supporting Plaintiffs' claims of competition, the descriptions and images in the Amended Complaint are at odds with Plaintiffs' self-description of their business.  Plaintiffs are adamant that they do not receive compensation from physicians to whom they make referrals, and state that they *only work for patients*. Plaintiffs argue that Omari's "plastic surgery consulting" work, which is of a marketing nature and is provided *to medical practices*, is competitive, but this is the opposite of Plaintiffs' characterization of their own work.

Plaintiffs next attempt to characterize a single post in which Omari referenced a website called "realself.com."  *Id.* ¶ 23.  Realself.com, however, is simply a free website where a person can go to look up surgeons in their area and review those surgeons credentials.  https://www.realself.com/.  Plaintiffs nonetheless claim that this single Instagram post, which predates the Post at issue by 6 months, and emphasizes the importance of "checking licensure" and having multiple consultations – is evidence of Omari's direct "competition" with Plaintiffs' business. *Unlike* Omari's endorsement of an online free resource, however, *Plaintiffs'*

7

business involves meeting directly with prospective surgery clients for a significant fee, advising those clients as to the specifics of certain surgical procedures, and giving those patients a list of doctors from Plaintiffs' exclusive "referral network." Omari is not alleged to offer any such services.

### C. The Amended Complaint, the Initial Complaint, and The Public Record

The Amended Complaint targets opinion statements that are not actionable. The Amended Complaint furthermore includes admissions that Plaintiffs have proposed fee-splitting and kickback schemes with doctors to whom they refer surgical patients; accepted payments from doctors that are members of Plaintiffs' referral network; and received "lavish" gifts from doctors in appreciation for Plaintiffs' referrals.

In paragraph 19 of the *initial* Complaint, Plaintiffs state, "<u>At no times</u> have Plaintiffs been paid by the doctors to whom they refers [sic] clients." Gordon Decl. at Ex. A, Complaint ¶ 19 (ECF No. 1) (emphasis added). This allegation is edited in the Amended Complaint where it appears as: "Plaintiffs <u>*are not* </u>paid by the doctors to whom they refers client." *Id*. at ¶ 35 (emphasis added). This edit pivots from the prior, now admittedly false, assertion that Plaintiffs have "**<u>at no times</u>**" been paid by doctors to whom they refer patients.

The edited "denial" in paragraph 35 is immediately and further undercut by a footnote. There, Plaintiffs state:

> Approximately 5 and a half years ago, Plaintiffs experimented with **using a model where patients would pay Plaintiffs 10% of the surgical fee and surgeons were simply asked to give a 10% discount to the plaintiff**, being simply an ask based entirely on an honor system. This model proposal was NOT a situation where Plaintiff was paid by the doctors and the patients and, in any event, the idea was abandoned by Plaintiffs. Additionally, back in 2012 **Plaintiffs initiated a membership program where surgeons paid to be part of Plaintiffs' network of doctors to whom they referred patients**. That program has also been abandoned for many years.

Gordon Cert. at Ex. B, Amended Complaint ¶ 35, n.1 (emphasis added).

These admissions were withheld from the initial Complaint, in which Plaintiffs swore to the Court that they had never received compensation from doctors in their referral network. This shift is alarming, but Plaintiffs attempt to minimize it. They do not disclose when they stopped receiving portions of doctor's surgical fees, or when they stopped receiving membership fees from doctors in order to be in Plaintiffs' referral network. They just dismiss it as a past practice.

In addition to the admissions in the Amended Complaint, which are sufficient grounds to grant Omari's Motion to Dismiss, the Court may take judicial notice of publically filed Complaints and other sources of information cited by Plaintiffs. Specifically:

- The Court may take judicial notice of a Complaint filed against Farina and Integrated Aesthetics in the Supreme Court of New York, in which Dr. Rafi Hovsepian, MD, alleges that he paid $10,200 to join Farina and Integrated Aesthetics' referral network for one year. In exchange for payment to join the network, Dr. Hovsepian alleges that he was promised at least three (3) tummy tuck/liposuction referrals, among

9

other services. *See* Complaint, *Hovsepian v. Integrated Aesthetics and Farina*, Index No. 653300/2013, Supreme Court of New York ("Hovespian Complaint"). Gordon Cert. Ex. D.

- The Court may take judicial notice of a federal Complaint filed by Simon Ourian, MD, in the Southern District of Florida against Farina, Beauty Brokers, and Integrated Aesthetics, in which Dr. Ourian alleges, "Under the guise of providing a public service, Farina employs Beauty Brokers and Integrated Aesthetics as instrumentalities to generate revenue while simultaneously working for doctors and their patients. Through what she promotes as an "Exclusive Referral Network," Farina acts as a "broker" steering clients/patients to aesthetic and cosmetic professionals who pay "membership fees" to Defendants." *Ourian v. Farina, et al*, 1:19-cv-24059, Southern District of Florida, Complaint 1 at paragraph 2 ("Ourian Complaint") (emphasis added). *Id.* at Ex. E.

- The Court may also consider, as the source of Plaintiffs' admissions in ¶ 53, the actual posts from Farina's Instagram account, as referenced in the Amended Complaint. *See e.g., id.* Ex. B, Amended Complaint ¶ 26 (quoting at from Plaintiffs' Instagram), ¶ 53 (admitting to Farina's receipt of the gifts below). These include:

  o A Christian Dior handbag from a doctor that Plaintiffs identify as "Dr. L;" *See id.* at Ex. F ("So pretty! Thank you so much Dr. L.");

  o Six bottles of Dom Pérignon Vintage 2015 from "Andy." *See id.* at Ex. G.

  o An Aman Resort gift card, posted with the comment, "Feeling the love from my Colorado fave! Thank you!!!" *See id.* at Ex. H.

  o An Apple TV device from a person that Plaintiffs identify as "Dr. H." *See id.* at Ex. I.

10

III.    **ARGUMENT**

The Amended Complaint fails to state a claim as to any allegation of defamation, false light, or tortious interference.

Similarly, with respect to Plaintiffs' claims for defamation and false light, Plaintiffs fail to identify any actually false statement by Omari. Moreover, in defamation and false light claims, plaintiffs who are public figures, as is the case here, must plead actual malice. This is also the case in matters of public concern, which are also at issue here. Under an actual malice standard, even if a statement is not true, for it to be actionable, the person making the statement must actually know that it is false at the time that it is made. Actual malice must be plead with specificity. Plaintiffs have failed to meet this standard by any measure.

With respect to tortious interference, Plaintiffs do not identify any factual basis for the claim. The tortious conduct is not established, and the harm is not identified. Plaintiffs do not identify any business loss they have faced as a result of Omari's post. This claim simply recasts Plaintiffs' deficient defamation and false light claims as another tort.

A.    **Legal Standard for Evaluating Motion to Dismiss**

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded

11

allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (emphasis added) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the

Court "may consider documents that are attached to or submitted with the complaint, and any '<u>matters incorporated by reference or integral to the claim, items subject to</u> <u>judicial notice, matters of public record, orders, [and] items appearing in the record</u> <u>of the case</u>.'") (emphasis added) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

> **B.    <u>The Amended Complaint Must Be Dismissed For Failure to State</u>** **<u>a Claim for Defamation or False Light, as Plaintiffs Target</u>** **<u>Protected Opinion Statements, Fail to Sufficiently Plead Falsity of</u>** **<u>Factual Statements, and Fail to Sufficiently Plead Actual Malice</u>**

The elements of the cause of action for defamation are: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 585 (2009) (quoting *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004)). **<u>In cases involving public officials, public</u>** **<u>figures, and matters of public concern, however, the third element of "fault" is</u>** **<u>elevated from a "negligence" standard to an "*actual malice*" standard</u>**. *Neuwirth*

13

*v. State*, 476 N.J. Super. 377, 391 (App. Div. 2023). Here, Plaintiffs have failed to plead facts to support the existence of a false and defamatory statement, or fault amounting to actual malice.

Similar to defamation, false light invasion of privacy is defined as "giv[ing] publicity to a matter concerning another that places the other before the public in a false light [if] (a) the false light in which the other was placed would be highly offensive to a reasonable person, <u>and</u> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988) (emphasis added). "<u>Simply put, false light invasion of privacy is "essentially [a claim] of defamation</u>." *Swan v. Boardwalk Regency Corp.*, 407 N.J. Super. 108, 121 (App. Div. 2009) (emphasis added).

### 1.    **Actual Malice Standard**

To satisfy the actual malice standard, "a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." *Id.* (citing *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 165 (1999)). "That is a high standard." *Id.* To prove that a publication was made with "reckless disregard" for the truth, a plaintiff must show that the publisher made the statement with a "high degree of awareness of [its] probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964), or with "serious doubts" as

14

to the truth of the publication. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451 (1982). Negligent publishing does not satisfy the actual-malice test. *St. Amant*, 390 U.S. at 732; *Costello v. Ocean County Observer*, 136 N.J. 594, 615 (1994).

A person is a public figure for all purposes, and subject to an actual malice pleading standard, when he has achieved "pervasive fame or notoriety," or for limited purposes when he "voluntarily injects himself or is drawn into a particular public controversy." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) ("If the aggrieved person is a public figure, "the constitutionally mandated standard of fault ... is the defendant's knowledge that the defamatory statement is false or his reckless disregard of its truth or falsity" - in other words, "actual malice."). This is because, unlike private individuals, "[p]ublic officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements." *Gertz*, 418 U.S. at 344.

Additionally, speech that addresses "matters of public concern [is] at the heart of the First Amendment's protection [and] occupies the highest rung of the hierarchy of First Amendment values." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985). Such speech will also be subject to an actual malice standard of pleading and proof. "Speech relates to a matter of public concern when

15

'it can be fairly considered as relating to any matter of political, social or other concern to the community." *Fenico v. City of Phila.*, 70 F.4th 151, 163 (3d Cir. 2023). Speech on such matters "requires maximum protection." *Rocci v. Ecole Secondaire Macdonald-Cartier*, 165 N.J. 149, 156 (2000).

The heightened standard of actual malice specifically applies to business activities that intrinsically implicate important public interests, matters of health, and industries heavily regulated by the government. *Turf Lawnmower Repair v. Bergen Record Corp.*, 139 N.J. 392, 411–12 (N.J. 1995) (contrasting same with less regulated industries, such as lawn mower sales, shoe repair of shoes, and everyday products or services that do not intrinsically involve a legitimate public interest). Statements regarding medical professionalism and ethics in have specifically been found in other states to constitute matters of public concern. *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (N.Y. Sup. Ct. App. Div. 2022) (<u>medical treatment rendered by a physician and his professional corporation is matter of public concern</u>).

To the extent that Plaintiffs attempt to argue for a lesser standard of proof, they would be incorrect insofar as they are public figures that operate in a realm – surgery – that by its nature implicates matters of public concern. Notably, were Plaintiffs to argue for this standard, they would be conceding their inability to obtain presumed or punitive damages. *Gertz*, 418 U.S. at 349–50 (recovery of presumed

16

or punitive damages is not permitted when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.).

> **2.      Plaintiffs Must Plead and Ultimately Prove Actual Malice Because They are Public Figures.**

Here, Plaintiffs are "public figures" that are subject to an actual malice pleading and proof requirement. Plaintiffs' Instagram page states that Farina has 228,000 followers.[1] It states that Plaintiffs have created 2,559 posts. It identifies Farina, directly under her picture, as a "**public figure**."



Gordon Cert. at Ex. C.

The Amended Complaint further describes Plaintiff Melinda A. Farina as "a leading global consultant, innovator, and entrepreneur in the health and beauty

---

[1]      The Amended Complaint includes a block quote, which Plaintiffs describe as originating from their Instagram page. Amended Complaint at ¶ 26. Id. As such, Plaintiffs' Instagram page is relied upon by Plaintiffs in the Amended Complaint, and is incorporated by reference into the Amended Complaint. *Buck*, 452 F.3d 256, 260. It is "undisputedly authentic" and may be considered in the course of deciding this Motion to Dismiss. *Fuller*, No. 19-20608, 2020 WL 5036215, at *2.

industry," and states that Plaintiff "operates through her business BEAUTY BROKERS - MELINDA FARINA INCORPORATED."  Amended Complaint at ¶ 8, 9.  The Amended Complaint describes Plaintiffs' global presence, stating: "For the past 23 years Plaintiff Melinda A. Farina has been a consultant in the aesthetic surgery industry. She began as a boutique consultancy in New York City and gradually *expanded globally*, reaching over 60,000 clients and working with more than 3,000 surgeons. To date, she has attended over 4,000 live surgeries as part of her role in consulting clients."  *Id.* at para 10.

Plaintiffs furthermore appear through their numerous references to interviews with various publications, and through their lengthy Instagram statements, to have achieved "pervasive fame or notoriety."  They have also "voluntarily injected" themselves into the public eye.  *See* Gordon Cert. at Ex. B, Amended Complaint ¶¶ 26, 37 (ECF No. 14).

### 3.    Plaintiffs Fail to Adequately or Consistently Plead Actual Malice Throughout the Amended Complaint and Also Erroneously Plead a *Per Se* Standard for Liability.

Plaintiffs confusingly alternate between a "negligence," "malice," and "negligence and/or malice" standard in their Amended Complaint.  *See id.* at ¶¶ 31, 39, 43, 62 (pleading variations of "negligence," "malice," "and/or," and "knew or should have known").

18

Pleadings that set forth a standard that is short of "actual malice" are not sufficient to state a claim under the facts presented. Plaintiffs are indisputably public figures, and are required to plead all elements of their claims by a standard of actual malice. To the extent that Plaintiffs plead negligence, they fail to state a claim upon which relief may be granted.

### 4.    <u>Plaintiffs' Claims for Punitive Damages Must be Dismissed</u>.

Plaintiffs claims for relief are contradictory and do not state a claim upon which relief may be granted.

In Count I of the Amended Complaint (Defamation), Plaintiffs plead malice (but not "actual" malice). *Id. at 63.* However, Plaintiffs also assert an impermissible "knew or should have known" standard into paragraph 62 of Amended Complaint. *St. Amant*, 390 U.S. at 731.

Plaintiffs then make a claim of libel *per se*, which is impermissible for public figure plaintiffs. Gordon Cert. at Ex. B, Amended Complaint ¶ 58; *see W.J.A. v. D.A.*, 210 N.J. 229, 247 & 249 (2012) (observing that New Jersey recognizes claims for defamation *per se*, however, such claims may only be made in cases brought by <u>private citizens</u>, involving only <u>private concerns</u>, and only for <u>nominal damages</u>.)

Similarly, in Count II of the Amended Complaint (False Light), Plaintiffs claim that Omari acted with either "actual and/or constructive malice."

"Constructive malice" is improperly proposed as an alternate standard without authority.

In summary, one cannot make sense of the demands for relief in Counts I and II of the Amended Complaint. They are contradictory, unsupported by applicable law, and fail to state a claim for which relief may be granted.[2]

### C.    Plaintiffs Plead No Facts to Support the Notion that Omari "Entertained Serious Doubts" as to the Truth of Any of the Factual Statements Identified in the Amended Complaint.

Plaintiffs allegations of actual malice in connection with Plaintiffs' defamation and false light claims (to the extent that actual malice is even determined to be sufficiently pled), consist of impermissible, conclusory statements with respect to Omari's alleged "knowledge of falsity or recklessness." These claims are unsupported by any statement of fact. As such, they fail to state a claim upon which relief may be granted.

The actual-malice standard is subjective and does not involve consideration of whether a reasonable person would have, or should have, known the statement was false; rather, it considers whether "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731; *see also DeAngelis*, 180 N.J. at 13 (finding the actual-malice standard is a

---

[2]    To the extent that Plaintiffs attempt to maintain this claim and forfeit their claim for any recovery other than <u>nominal</u> damages, they also likely plead themselves out of diversity jurisdiction.

"subjective" standard); *Costello*, 136 N.J. at 615. Thus, "the focus of the 'actual malice' inquiry is on a defendant's attitude toward the truth or falsity of the publication, on his subjective awareness of its probable falsity and his actual doubts as to its accuracy." *Costello*, 136 N.J. at 617 (quoting *Lawrence*, 89 N.J. at 467–68). Malice does not refer to a "bad or corrupt motive" or "personal spite, ill will or a desire to injure [the] plaintiff." *Marchiano v. Sandman*, 178 N.J. Super. 171, 174 (App. Div. 1981) (quoting *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 82 (1967)); *see also Trump v. O'Brien*, 422 N.J. Super. 540, 559 (App. Div. 2011) (finding "ill will does not constitute actual malice"). "[E]rrors of interpretation of judgment" and "misconceptions" are not sufficient to demonstrate actual malice. *Lawrence*, 89 N.J. at 468.

**Conclusory pleadings are impermissible in defamation cases**, *Glass v. Suburban Restoration Co.*, 317 N.J. Super. 574, 582 (App. Div. 1998), in which "… courts must balance 'an individual's right to protect his reputation . . . and our citizens' right to free expression and robust debate in our democratic society.'" *Neuwirth* at 391 (citing *PetroLubricant Testing Labs., Inc. v. Adelman*, 233 N.J. 236, 243 (2018)); *see also Rocci*, 165 N.J. 149, 155 (2000) (courts in defamation cases must balance protecting reputation and protecting free speech) (citing *Ward v. Zelikovsky*, 136 N.J. 516, 528 (1994)).

21

Here, the Amended Complaint fails to state a claim upon which relief may be granted with respect to defamation or false light. To survive a Motion to Dismiss, Plaintiffs must plead facts to support the notion that Omari had actual knowledge of the falsity of her statements, or recklessly disregarded the probable falsity of her statements. Plaintiffs must plead facts that support the reasonable conclusion that Omari made a false statement with a "high degree of awareness of [its] probable falsity," *Garrison*, 379 U.S. at 74, or with "serious doubts" as to the truth of the publication. Plaintiffs point to no such facts.

Instead, Plaintiffs cite "publically available posts," in which they allege that "Plaintiff confirms that her business model does not involve payments to doctors." Critically, however, Plaintiffs do not allege that Omari had knowledge of these various and sometimes obscure podcasts, listened to them all, and therefore "held serious doubts" about the truth of her statements. *See* Gordon Cert. at Ex. B, Amended Complaint ¶ 37.

Even if Omari had been aware of the podcasts, she is not required to credit Plaintiffs' self-serving statements, which – like the initial Complaint before this Court – may be prone to grave mischaracterization. Indeed, in *The Blonde Files Podcast*, dated July 15, 2020, Farina states, "doctors don't pay me;" however, that statement was made at or around the time that Plaintiffs had a business model by

22

which surgeons were asked to reduce surgical fees for Plaintiffs' patient referrals so that Plaintiffs could then charge patients that exact amount. *Id.* at ¶ 35, n.1.

> **D.     Plaintiffs Fail to State a Claim Upon Which Relief May be Granted As Their Claims Target Protected Opinion Statements and They Fail to Plead Falsity (and Admit the Truth) of Factual Statements at Issue**

In paragraph 50 of the Amended Complaint, Plaintiffs provide "an encapsulation of the defamatory statements made by Defendant." Amended Complaint at para 50. Plaintiffs' "false light" cause of action relies on the same facts. *Id.* at ¶¶ 65–69.

The vast majority of the allegedly defamatory statements are opinions, which are not actionable under any circumstance, and must be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief may be granted. The remainder of the allegedly defamatory factual statements identified in the Amended Complaint are either 1) not defamatory, 2) are not false, as admitted by Plaintiffs in other portions of the Amended Complaint, and by review of facts incorporated by reference into the Amended Complaint, or 3) fail to satisfy the pleading requirement for actual malice, as required for complaints brought by public figures. Each of these failures constitutes an independent basis for dismissal of each alleged statement under FRCP 12(b)(6).

Omari addresses each allegedly defamatory statement in turn.

## 1.    "She's just a dental hygienist"

Plaintiffs single out the phrase, "…she's just a dental hygienist…" as defamatory.  This phrase is drawn from a longer statement in the Post that reads as follows:

> What's Melinda/Beauty Broker's deal?  She's full maga but was always a celeb gossip.  She does have celeb clients… but she's just a dental hygienist who gets paid on both ends to book patients with plastic surgeons she says are in her "little black book.'"

Amended Complaint at ¶ 41 (ellipses in original).

Plaintiffs complain that the phrase, "just a dental hygienist," is defamatory because Farina "is a plastic surgery consultant."  *Id.* ¶ 50.  However, there is no authority for the proposition that calling a person as a dental hygienist is defamatory, particularly where that person's background is, in fact, *that of a dental hygienist*.  That is not a defamatory statement, nor is it a false one.

Farina is a dental hygienist by training.  Farina discusses her background as a dental hygienist in numerous interviews, including those cited in the Amended Complaint.  *See e.g.*, *id.* at ¶ 38 (quoting and incorporating by reference the Beauty Broker website) (https://www.thebeautybrokers.com/); (quoting and incorporating Beauty Broker website, which touts Plaintiffs' interviews in *Entrepreneur*, *Allure*, *Glamour*, *Coveteur*, *Elle* and *Industry Magazine* and quoting Beauty Broker website, which, touts Farina's interview in *Industry Magazine*, July 24, 2017

24

(https://industrym.com/beauty-broker/?city=staten%20island)    ("I    became    so

interested in the field of dentistry that I went to school for dental hygiene.")).

Plaintiffs do not dispute the fact that Farina previously worked as a dental

hygienist.  Instead, Plaintiffs are upset that Omari did not give Farina the title,

"plastic surgery consultant."  *Id.* ¶ 50.  That is not a basis to sue for defamation.

Moreover, upon review of the context of the phrase, "…just a dental hygienist…,"

which follows the question, "what's the deal with Melinda/Beauty Broker[?]," it is

clear that the remark strikes at Farina's "credentials" and whether they are sufficient

for the service she purports to offer to patients.  Plaintiffs may prefer that the world

refer to Farina as a "plastic surgery consultant," but that is a marketing phrase, not a

professional credential.

Notably, the Beauty Brokers website is ambiguous in its description of

Farina's "credentials."  It states that she holds certain "licenses" and "certificates"

in "dentistry" and "practice management consulting," and that she has "trained with

world renowned surgeons" in an unidentified setting.  However, Farina is not known

to hold any medical licenses or to have formal training outside of dental hygiene.

She does not hold a license in "dentistry" and does not identify any such credentials

in the Amended Complaint.

In sum, Plaintiffs fail to establish that the remark, "…she is just a dental

hygienist…", is defamatory, false, or made with actual malice.  It is at worst flippant.

25

To the extent that Plaintiffs claim that the comment is defamatory because it does not identify any of Plaintiff Farina's other unspecified credentials, that is not a basis for recovery.

### 2.  Plaintiff "gets paid on both ends."

Plaintiffs claim that this phrase, which is an excerpt from the lengthier statement cited above, is false and defamatory, claiming:

> This is a false statement in that Plaintiff gets paid by patients only. The statement is made in the present tense and is false.  It is well known that Plaintiff only gets paid by her patients and not by doctors.  Any prior business model was abandoned years ago.

Amended Complaint at ¶ 50 (emphasis added).

The Amended Complaint, however, concedes the truth of the very facts that Plaintiffs attempt to dispute.

First, Plaintiffs admit that they structured a payment scheme by which they asked surgeons to reduce their fee for referred patients by 10% so that Plaintiffs could charge that amount directly to their referred patients and keep the proceeds for themselves. *Id.* at ¶ 35, n.1.  Second, Plaintiffs admit that they maintained prior payment schemes by which Plaintiffs charged doctors membership fees to be in Plaintiffs' exclusive referral network.  *Id.*  Third, Plaintiffs admit their receipt of exorbitant gifts from doctors as appreciation for Plaintiffs' referrals.  *Id.* at ¶ 53 (admitting receipt of "lavish" gifts from doctors).

26

While Plaintiffs argue that the first two schemes, under which they received a cut of what would ordinarily be charged to patients as a surgical fee, and under which they charged doctors for membership in Plaintiffs' referral network, were "abandoned," they are silent as to *when* those schemes were abandoned. Accordingly, Plaintiffs' claim of "falsity" is reduced to Omari's use of the "present tense."

Under the scheme described, Plaintiffs attach themselves to the (alleged) fact that they did not receive literal checks from "both sides." However, it is clear that the structure described by Plaintiffs was *designed to give Plaintiffs a cut of what the doctors would ordinarily receive* in addition to the consulting fees that they charge to patients. Omari's observation that Plaintiffs are "paid on both sides" is not rendered "false" or "defamatory" by virtue of Plaintiffs' failed efforts to structure their way around ethical and legal restrictions. To the contrary, Omari's statement is <u>true</u>.

Having made this concession, Plaintiffs allege that Omari "knew or recklessly disregarded the fact that Plaintiff is not paid *directly* by doctors." *Id.* at ¶ 36 (emphasis added). Given the admissions surrounding this allegation, Plaintiffs are dancing on the head of a pin.

Furthermore, an examination of the factual claims in the *initial* Complaint, versus the *Amended* Complaint, is concerning. Plaintiffs' categorical denial that

27

they ever received payment from surgeons is softened to the present tense. *Compare* Gordon Cert. at Ex. A, Complaint ¶19 *with* Ex. B, Amended Complaint at ¶ 35.

### 3.    "<u>And allegedly gets kickbacks</u>."

Plaintiffs' objection to the phrase "and allegedly gets kickbacks" fails for the same reasons set forth above with respect to the phrase "gets paid on both ends." Plaintiffs state, without citation:

> Cambridge Dictionary defines 'kickback' as an amount of money that is paid to someone illegally in exchange for secret help or work.' <u>Doctors do not pay Plaintiff illegally in exchange for secret help or work</u>.

Amended Complaint at ¶ 50 (emphasis added).

The admissions contained in the Amended Complaint contradict Plaintiffs' allegation.  Moreover, given the facts presented and admitted by Plaintiffs, Omari's statements regarding Farina's "alleged" receipt of a "kickback" cannot be construed a "malicious" under the law, and is in fact accurate.  While Omari does not need to demonstrate the existence of an illegal kickback in order to prevail on a Motion to Dismiss, Omari is essentially able to do so based on the facts admitted.

New Jersey law prohibits certain conduct that appears to be at issue in this matter.   Under N.J. Admin. Code §13:35-6.17, titled, "<u>Professional fees and investments, prohibition of kickbacks</u>:"

> <u>A licensee shall not, directly or indirectly, give to or receive from any licensed or unlicensed source a gift of more than nominal (negligible) value, or any fee</u>, commission, rebate or bonus or other compensation

28

however denominated, which a <u>reasonable person would recognize as having been given or received in appreciation for or to promote conduct by a licensee including</u>: purchasing a medical product, ordering or promoting the sale or lease of a device or appliance or other prescribed item, prescribing any type of item or product for patient use <u>or making or receiving a referral to or from another for professional services</u>.

*Id.* (emphasis added).

While Farina is not known to hold any medical license, the doctors that send her gifts, as admitted in paragraph 53 of the Amended Complaint, and which reasonably appear to be in excess of "nominal" value, presumably do hold medical licenses. As such, those doctors would be prohibited under New Jersey law from giving a licensed or unlicensed source, such as Plaintiffs, a gift of more than nominal value that a reasonable person would recognize as having been given in appreciation for or to promote the receipt of a referral.

For purposes of this Motion, it is not necessary to reach a conclusion as to whether the gifts described in Farina's posts constitute a kickback, legal or illegal. The simple fact is that, regardless of the legality of Farina's conduct, Omari's statement that Farina "allegedly gets kickbacks," under this set of facts and in this legal framework, is not defamatory much less malicious.

4.    **"<u>Basically people now pay $1,000 to have a consult with her so she can suggest one of these surgeons "Beauty Brokers' "Little Black Book" of surgeons</u>."**

The comment contains a link to a Reddit post. Amended Complaint at ¶ 41. The Reddit post is not alleged to have been created by Omari, and was not created

by Omari.  The Reddit post appears to have been created approximately one year prior to the Instagram post at issue in the Amended Complaint.

With respect to the link to the Reddit post in the statement, Plaintiffs take specific issue with: 1) the list of doctors referenced in the Reddit post, and 2) the fee cited, claiming, "This is a false and defamatory representation of Plaintiff's business."

Plaintiffs specifically allege:

> Moreover, the surgeons referenced in that list are not accurate. The list is therefore false as well. There are many more doctors that Plaintiffs use than what Defendant listed. Moreover, Plaintiff does not work with many of the doctors listed in the list disseminated by Defendant. Defendant defamed Plaintiffs by falsely representing that Plaintiffs' list of doctors she uses is much smaller than in reality. Defendant further defamed and maliciously harmed plaintiff by telling people that Plaintiffs charge $1,000 for a consultation when her fee is less than that. Defendant lied to the public about Plaintiffs' fees and lied to the public about the names of doctors in Plaintiffs' network and the number of doctors to whom Plaintiffs refers patients.

Plaintiffs' objections do not support a claim.  Even if the doctor list is inaccurate – and Plaintiffs pleadings as to accuracy are conflicting at best – that does not make it "defamatory."  Moreover, there is no pleading that supports the notion that the link, which had been posted on Reddit for almost a year prior to the Post,

30

was shared with knowledge of its *falsity*. *See* Amended Complaint at ¶ 44 (Plaintiffs suggest that the list is indeed largely *accurate*).[3]

Regarding the alleged misstatement of fee, Plaintiffs notably do not state what their actual fee is. The Reddit post that is incorporated by reference in the Amended Complaint contains a number of past comments that suggest various fees over the years, including several cites to a $750.00 fee, and a cite to a "1K" fee. Even if the fee identified in the Post is inaccurate, Plaintiffs have not plead any facts upon which this Court could determine that the alleged inaccurate fee is materially false, defamatory, or was published with knowledge of falsity.

5. **"Lots of surgeons I know have STORIES, and tons of my followers have sent in stories of her being super rude, canceling all the time and being late, not helpful, and having a hard time getting their money back if she messes up or doesn't provide the services promised."**

Plaintiffs object that "Lots of surgeons do not have 'STORIES' about Plaintiff," and claim, without factual elaboration, that "Tons of [Defendant's] followers have not 'sent in stories of her being super rude, canceling all the time and being late, not helpful, and having a hard time getting their money back if she messes up or doesn't provide the services promised.'" Amended Complaint at ¶ 50.

---

[3]    The Reddit post notably includes a disclaimer, and states that it is based on "publically available research and reverse searches of Plaintiffs' Instagram pages," and "personal research." The Reddit post makes clear that it is not affiliated with Plaintiffs and does not offer any comment as to the surgeons listed. It cautions people to do their due diligence when selecting a surgeon.

31

ME1 52641101v.1

Plaintiffs then write, "this is also negligent and/or malicious dissemination of defamatory content about Plaintiff.  Plaintiff has not "messe[d] up or [failed to] provide the services [she] promised." *Id.*

As a public figure, Farina fails to cite to the relevant standard of intent for defamation.  Negligent dissemination of defamatory content is not actionable. Moreover, the very citations that Plaintiffs rely upon to demonstrate damages in fact point to Plaintiffs' widespread, negative reputation, which long pre-dates Omari's post.  *See infra* § D (7) (herein with respect to damages).

> **6.** **Melinda Farina is a bad person and bad business woman; that she scams a lot of people; and had a surgical procedure but never paid for it; among many other defamatory comments.**

Plaintiffs write, "Melinda Farina is not a bad person or a bad business woman. She does not 'scam a lot of people.' She did not have a surgical procedure and then refuse to pay for it."  Amended Complaint at ¶ 50.

Unlike Plaintiffs' other allegations, this unquoted summarization of an alleged statement does not appear in the initial Complaint, and does not originate from the Post.  Plaintiffs claim that it was made on or about January 29, 2025 during a live stream on Instagram.  *Id.* at ¶ 42.  If discovery were to commence, Omari would be able to show that she did not conduct *any* live stream on that date or any date in proximity, and never made the alleged comments.

32

Insofar as the allegation does not contain any direct quotes, it violates Fed. R. Civ. P. 12(e), as Omari cannot identify any such statement. However, taking Plaintiffs' pleadings at face value, and indulging in their allegations for the sake of argument, Plaintiffs still do not present the Court with an actionable claim.

The first sentence regarding Farina being a "bad person" and a "bad business woman" is not actionable because it is opinion.

The second alleged statement, that Farina scams a lot of people, could easily be fair criticism and a statement of opinion based on the lengthy discussion herein regarding Farina's lack of medical qualifications, her varying representations regarding same, her admitted fee-splitting, payments she received for referrals, and gift receipts from doctors.

As to the supposed statement that Farina "had a surgical procedure but never paid for it, that statement is also exceedingly vague, and is not actionable. It is unclear whether that alleged statement is meant to say that Farina has received plastic surgery for free, or had plastic surgery and failed to pay the bill. The alleged statement is capable of non-defamatory meaning, but is not capable of further response as it stands.

The "many other defamatory comments" described in this section of the Amended Complaint lack specificity and are not actionable.

33

ME1 52641101v.1

With respect to all of the allegations in this paragraph, all of the alleged damages that Plaintiffs have identified in the Complaint pre-date the comment. No additional damages have been identified as a result of this alleged live stream statement.

### 7.    <u>Plaintiffs Fail to Sufficiently Plead Damages</u>

The intitial Complaint failed to identify any lost business opportunities, in violation of the requirements for pleadings in defamation cases involving public figures, or for cases involving alleged tortious interference. The Amended Complaint fails to cure that deficiency.

The Amended Complaint purports to cite three comments that appear to be extracted from the Reddit comment section (Plaintiffs do not cite the source) as support for their damages claims. In those comments, unnamed individuals discuss why they have not used Plaintiffs services. However, all of these citations refer to independent reasons for the unidentified posters' decisions not to use Plaintiffs.

In the first comment, a poster identified as "Entire-Departure-848" states that they had considered using Plaintiff, but read "mixed reviews online," and have the impression that "many people have had negative experiences" with Farina. Amended Complaint at ¶ 52.

In the second comment, a poster under the username handle "Dry-Student5673" states that they used to follow Plaintiffs on IG (Instagram) and planned

34

to use her to help find a surgeon, but then did a "deep dive" and read a "ton of bad reviews and experiences."  The poster also states that they could not support her due to her outspoken political views.  *Id.*

In the third comment, a person using the handle "savedbygrace47" thanks another unnamed poster for their review, and writes, "I couldn't have handled what you experienced."  *Id.*

In the fourth comment, another poster using the handle "Ilooovecleмentines" writes that they decided not to use Plaintiffs due to their own online research about her, which included "plentyyyy of negative reviews."  *Id.*  That poster also found Plaintiffs' Instagram account and determined that "something felt so off."  *Id.*  The poster writes that even if they did not believe the negative reviews about Plaintiffs, they would not use her because the "comments from her team confirm that she's absolutely shady and whackadoodle."  *Id.*

These posts, which reflect unidentified peoples' opinions and personal experiences, bear no connection to Omari's comments.  To the contrary (and to the extent that they could even be authenticated for use in a court of law), they would serve as evidence of widespread negative experiences that people have had and talked about in a range of forums, and impressions that are often based upon Plaintiffs' own conduct and outspoken political positions.

In sum, the Amended Complaint sets forth four alleged prospective clients, none of which are identifiable by name, and *none of which point to Omari as the basis for their decision not to work with Plaintiffs*. All point to droves of public reviews in which people have given accounts of their direct, negative experiences with Plaintiffs. Finally, it must be noted that the total value of these prospective clients, which are not connected to Omari, is less than $3,000, according to Plaintiffs' pleadings.

### E. Plaintiffs Fail to State a Claim for Tortious Interference With Prospective Economic Advantage

Plaintiffs' claim for tortious interference with prospective economic advantage is based upon the same facts as Plaintiffs' claims for defamation and false light. Once again, Plaintiffs' fail to plead any of the elements for this claim.

Under New Jersey law, "a plaintiff can establish a cause of action for tortious interference with business relationships by showing the following elements: (1) they had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage." *Dill v. Yellin*, 725 F. Supp. 3d 471, 488 (D.N.J. 2024). In this context, malice "does not

36

literally require ill will but rather is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Id.* at 489.

A plaintiff must identify at least one, distinct lost business opportunity in order to establish a cause of action for tortious interference. *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) (to state a claim for tortious interference under New Jersey law a plaintiff must identify at least a "single, specific customer" that it lost or could have acquired). A plaintiff must do more than assert that it lost business; "…rather it 'must allege facts that show an existing or prospective economic or contractual relationship' for a 'mere allegation of lost business does not suffice.'" *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998). Accordingly, "the claimed loss of ... unknown customers cannot, standing alone, state a claim for tortious interference with prospective business relations." *Harmon v. Borough of Belmar*, No. 17-2437, 2018 WL 6068216, at *8 (D.N.J. Nov. 20, 2018).

Plaintiffs fail to meet the first element of their claim for tortious interference, as they fail to identify any specific economic advantage at issue. Plaintiffs also fail to meet the second element insofar as they fail to identify the portions of the Post that rise to the level of malice, or that an alleged harm was inflicted intentionally or without justification or excuse. Additionally, Plaintiffs fail to meet the requirements for the third element of the count, in that they cannot state that there was a reasonable

ME1 52641101v.1

probability that they would have obtained the business opportunity but for Omari's conduct since they cannot identify any such opportunity in the first place.  Finally, Plaintiffs cannot identify any damages.

Numerous allegations and opinions regarding Plaintiffs' business ethics and professionalism have been part of the public record for an extended period of time, such that any purported harm cannot be causally attributed to Omari.  Regardless, the alleged loss of business due to an act of protected speech is simply not actionable.

## IV.  **CONCLUSION**

For the foregoing reasons, Omari seeks an order of dismissal as to all Counts of the Complaint.  Omari previously served a Special Motion pursuant to the New Jersey Uniform Pubic Expression Act, and reserves the right to pursue same in the event that further motion practice is necessary in this matter.  Given the content of the Amended Complaint, at this time Omari anticipates first serving a Rule 11 Motion in accordance with the Court Rules.  The Motion will be in connection with various averments submitted in the initial Complaint and admissions contained in the Amended Complaint.  The Rule 11 Motion will be separately filed as required.

Respectfully submitted,

Daniella Gordon

Date: April 1, 2025

38