**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELINDA FARINA and<br>BEAUTY BROKERS – MELINDA FARINA INCORPORATED,<br><br>       Plaintiffs,<br><br>v.<br><br>DANA ABED OMARI,<br><br>       Defendant. | Civil Action No. 24-11098 (SDW) (AME)<br><br>**OPINION**<br><br>September 29, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant Dana Abed Omari ("Defendant") Motion to Dismiss (D.E. 21 ("Motion")) Plaintiffs' Melinda Farina ("Farina") and Beauty Brokers – Melinda Farina Incorporated's ("Beauty Brokers") (collectively, "Plaintiffs") Amended Complaint (D.E. 14 ("Compl.")) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

**I. FACTUAL BACKGROUND**

The instant matter arises from several statements Defendant allegedly made about Plaintiffs on Instagram. Plaintiff Farina is a consultant in the aesthetic surgery industry and operates through her business Beauty Brokers. (Compl. ¶¶ 8–10.) Defendant is also a plastic surgery and aesthetics consultant. (*Id.* ¶ 13.) Plaintiff Farina is a resident of New Jersey; Plaintiff Beauty Brokers is a

1

corporation with its principal place of business in New Jersey; and Defendant is a resident of Texas. (*Id.* ¶ 6, 7, 11.)

As asserted by Plaintiffs, Farina is a "leading global consultant, innovator, and entrepreneur in the health and beauty industry," who has reached over sixty-thousand clients and worked with more than three-thousand surgeons. (*Id.* ¶¶ 8, 10.) Farina has made at least nine appearances on various podcasts discussing her business model and whether she receives compensation from doctors. (*Id.* ¶ 37.) Additionally, Plaintiffs have over 228,000 followers on Instagram, where Plaintiffs refer to Farina as a "public figure." (D.E. 21-5.)[1]

On or about November 1, 2024, Plaintiffs published an Instagram post discussing privacy in healthcare and the ethical implications of leaking celebrity surgery information. (*Id.* ¶ 26.) Plaintiffs assert that in response to their opinion on leaking celebrity surgery information, Defendant made several defamatory statements questioning Plaintiffs' credentials and alleging that Plaintiffs received kickbacks from surgeons. (*Id.* ¶¶ 27–32.) Plaintiffs further assert that on January 29, 2025, Defendant streamed live on Instagram and stated that "Farina is a bad person and bad businesswoman; that she scams a lot of people; and had a surgical procedure but never paid for it." (*Id.* ¶ 42.) Also, Plaintiffs assert that Defendant is their competitor and that she wrongfully revealed doctors within Plaintiffs' referral network to interfere with their prospective business relations. (*Id.* ¶¶ 44–49.)

On December 12, 2024, Plaintiffs filed their initial complaint. Then on February 27, 2025, Plaintiffs filed the instant amended complaint. Plaintiffs assert three counts against Defendant:

---

[1] In deciding a Rule 12(b)(6) motion, this Court may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

(1) defamation; (2) false light; and (3) tortious interference with prospective business relations. (*Id.* ¶¶ 57–76.)

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer*, 605 F.3d at 229. Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Defamation and False Light (Counts I and II)

*i. Limited Public Figure*

3

Under New Jersey law, a defamation claim has three elements: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher or actual malice. *G.D. v. Kenny*, 15 A.2d 300, 310 (2011) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1268 (2004)). To succeed on a false light claim, a plaintiff must prove that: (1) "the false light in which the plaintiff was placed would be highly offensive to a reasonable person" and (2) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Chipola v. Flannery*, 339 A.2d 309, 315 (2025) (citing *Romaine v. Kallinger*, 537 A.2d 284, 290 (1988)).

In defamation cases where the plaintiff is a public figure, the plaintiff must establish that the defendant made the statements at issue with "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Like a defamation claim, a false light claim against a public figure also utilizes the actual malice standard. *See DeAngelis*, 847 A.2d at 1271. The Supreme Court has identified two types of public figures: (1) general public figures and (2) public figures for a limited purpose. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A general-purpose public figure is defined as someone who has "achieve[d] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Id.* On the other hand, "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*; *see also Senna v. Florimont*, 958 A.2d 427, 437 (2008) (stating that New Jersey courts apply the actual malice standard when the challenged speech touches on matters of public concern).

4

Defendant argues that Farina is either a public figure or a limited purpose public figure. (D.E. 21-1 at 17.) Conversely, Plaintiffs assert that Farina is a private individual and did not voluntarily inject herself into a particular public controversy. (D.E. 24 at 17.)

This Court finds that Farina is a limited purpose public figure. Farina has voluntarily injected herself into a particular public controversy within the cosmetic surgery industry. Farina has made several publicized media appearances discussing medical ethics and compensation from surgeons. (Compl. ¶ 37.) Plaintiffs have also created and shared content regarding said controversy to their 228,000 Instagram followers, where they refer to Farina as a "public figure." (D.E. 21-5.) *See e.g., Konowicz v. Carr*, No. 15-6913, 2019 WL 13402853, at *6 (D.N.J. July 31, 2019) (stating that defendant was a limited purpose public figure because he had over 250,000 Facebook followers, appeared on the radio over 20 times, and operated a website dedicated to weather reporting). Moreover, Plaintiffs affirmatively state that Defendant's alleged defamatory statements were made in response to Plaintiffs' public statements about leaking celebrity surgery information. (Compl. ¶¶ 27–31.) Accordingly, Farina is a limited purpose public figure and must plead that Defendant made the alleged defamatory statements with actual malice.

    ii.    *Actual Malice*

Defendant asserts that Plaintiffs' defamation and false light claims fail because they have not sufficiently pled that she made the alleged defamatory statements with actual malice.[2] (D.E. 21-1 at 13.) "Actual malice has 'nothing to do with hostility or ill will; rather it concerns [a] publisher's 'state of knowledge of the falsity of what he published, not at all upon his motivation in publishing it.'" *DeAngelis v. Hill*, 847 A.2d 1261, 1270 (2004) (quoting *Lawrence v. Bauer Pub.*

---

[2] As described in further detail below, Plaintiffs fail to state a claim for defamation and false light because they do not sufficiently plead actual malice. As such, the arguments concerning whether the alleged defamatory statements were in fact defamatory and/or truthful need not be addressed.

*& Printing Ltd.*, 446 A.2d 469, 477 (1982)). The existence of actual malice depends on whether Defendant published the statement knowing that it was false or with a reckless disregard for its truth. *See id.* at 18 (citing *Lynch v. New Jersey Educ. Ass'n*, 735 A.2d 1129, 1136–1137 (1999)). It is a subjective standard that does not involve consideration of whether a reasonable person would have or should have known the statement was false. *See DeAngelis*, 847 A.2d at 1268.

Here, Plaintiffs fail to state a claim for defamation and false light. Plaintiffs assert no facts demonstrating that Defendant knew, or had serious doubts about, the veracity of the allegedly defamatory statements she made. Plaintiffs' conclusory claims that Defendant acted with "malice," (Compl. ¶ 63) and made statements with "actual knowledge of its falsity and/or reckless disregard for their falsity," (*id.* ¶ 52), are mere recitations of the legal standard, not factual assertions. Plaintiffs' references to her podcast interviews and statements from her website are also unavailing (*id.* ¶¶ 37–38.) *See Lynch*, 735 A.2d at 1139 (finding that a "[m]ere failure to investigate all sources" does not demonstrate actual malice). Accordingly, Counts I and II of Plaintiffs' Amended Complaint are dismissed.

   iii. Commercial Speech

Plaintiffs submit that the actual malice standard does not apply because Defendant's statements constitute commercial speech, which calls for the application of the negligence standard. (D.E. 24 at 15.) As asserted by Plaintiffs, Defendant is her "competitor" and she "wrongfully disseminated Plaintiff's trade secrets to interfere with Plaintiffs' prospective business." (Compl. ¶¶ 45–49.) Plaintiffs correctly point out that the negligence standard applies to commercial speech. *See Senna v. Florimont*, 958 A.2d 427, 444 (2008). However, Plaintiffs' claims that Defendant is a "competitor" and committed trade secret violations are baldly asserted and fail to satisfy the applicable pleading standards.

### B. Tortious Interference with Prospective Business Relations (Count III)

Plaintiffs fail to plead facts sufficient to support their claim for tortious interference with prospective business relations. Under New Jersey law, to prove a claim for tortious interference with a prospective business relation, a plaintiff must show that it "had a reasonable expectation of economic advantage that was lost as a direct result of defendant's malicious interference, and that it suffered losses thereby." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (2001) (citing *Baldasarre v. Butler*, 625 A.2d 458, 465 (1993)). Here, Plaintiffs fail to allege the existence of any lost prospective economic benefit that they would have retained "but for" Defendant's alleged interference. Instead, the Amended Complaint itself refers to posts from individuals who describe several reasons why they have not used Plaintiffs' services, independent of Defendant's remarks. (Compl. ¶ 52.)

At this stage, even when drawing all reasonable inferences in Plaintiffs' favor, the allegations here do not support a plausible theory that Defendant tortiously interfered with Plaintiffs' prospective business relations. Accordingly, the Motion to Dismiss is granted as to Count III.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff shall have thirty (30) days to file an amended complaint. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: André M. Espinosa, U.S.M.J.
    Parties