<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELINDA FARINA and BEAUTY BROKERS – MELINDA FARINA INCORPORATED, | Civil Action No. 24-11098 (SDW) (AME) |
| Plaintiffs, | **OPINION** |
| v. | June 2, 2026 |
| DANA ABED OMARI, | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant Dana Abed Omari's ("Defendant") Motion to Dismiss (D.E. 42 ("Motion")) Plaintiffs' Melinda Farina ("Farina") and Beauty Brokers – Melinda Farina Incorporated's ("Beauty Brokers") (collectively, "Plaintiffs") Second Amended Complaint (D.E. 39 ("SAC")) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendant also seeks a determination that the action is subject to the New Jersey Uniform Public Expression Protection Act ("UPEPA"), N.J. Stat. Ann. § 2A:53A-49 *et seq*. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED WITH PREJUDICE**.

## I.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The instant matter arises from several statements Defendant allegedly made about Plaintiffs on Instagram. Plaintiff Farina is a consultant in the aesthetic surgery industry and operates through

her business Beauty Brokers.  (SAC ¶ 20.)  Defendant is also a plastic surgery and aesthetics consultant.  (*Id.*)  On or about November 1, 2024, Plaintiffs published an Instagram post discussing privacy in healthcare and the ethical implications of leaking celebrity surgery information.  (*Id.* ¶ 51.)  Plaintiffs assert that in response to their opinion on leaking celebrity surgery information, Defendant made several defamatory statements questioning Plaintiffs' credentials and alleging that Plaintiffs received kickbacks from surgeons.  (*Id.* ¶¶ 36–39.)  Plaintiffs further assert that on January 29, 2025, Defendant streamed live on Instagram and stated that "Farina is a bad person and bad businesswoman; that she scams a lot of people; and had a surgical procedure but never paid for it."  (*Id.* ¶ 63.)  Also, Plaintiffs assert that Defendant is their competitor and that she wrongfully revealed doctors within Plaintiffs' referral network to undermine their business.  (*Id.* ¶ 79.)

On December 12, 2024, Plaintiffs filed their initial complaint.  On February 27, 2025, Plaintiffs filed an amended complaint, which Defendant moved to dismiss.  (D.E. 21.)  The motion to dismiss was granted on September 29, 2025.  (D.E. 37.)  Plaintiffs then filed a second amended complaint on October 29, 2025 (D.E. 39).  The operative complaint asserts five counts against Defendant:  (1) defamation; (2) false light; (3) tortious interference with prospective business relations; (4) false advertising/unfair competition; and (5) trade libel.  (*Id.* ¶¶ 96–136.)  Defendants filed the instant motion to dismiss, and all briefing was timely completed.

## II.    LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

2

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer*, 605 F.3d at 229. Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

### A.  Defamation, False Light and Trade Libel (Counts I, II and V)

#### i.   Defamation (Count I)

Under New Jersey law, a defamation claim has three elements: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher or actual malice. *G.D. v. Kenny*, 15 A.2d 300, 310 (N.J. 2011) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004)). Generally, a defamatory statement is one that subjects an individual to contempt or ridicule and harms a person's reputation by lowering the community's estimation of him or by

deterring others from wanting to associate or deal with him.  *Kenny*, 15 A.3d at 310 (citations omitted).

Whether words can reasonably be construed as defamatory is a question of law.  *Reed v. Scheffler*, 218 F. Supp. 3d 275, 282 (D.N.J. 2016), *aff'd*, 771 F. App'x 162 (3d Cir. 2019) (citing *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 764 (D.N.J. 1981); *Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994)).  Whether a statement is defamatory depends on "its content, verifiability, and context."  *Mangan v. Corporate Synergies Group, Inc.*, 834 F.Supp.2d 199, 204 (D.N.J. 2011) (citing *Lynch v. N.J. Educ. Assoc.*, 735 A.2d 1129, 1136 (N.J. 1999)).  To qualify as a defamatory statement, the statement must be able to be proven true or false.  *Id.*  Statements of pure opinion do not satisfy this requirement because such statements only "reflect a state of mind," and therefore generally "cannot be proved true or false."  *Id.*  Statements of opinion do not receive "a wholesale defamation exemption," if the statements "imply false underlying objective facts."  *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)) (other citations omitted).

Plaintiffs identify the following statements as defamatory:

1. "[Farina] is just a dental hygienist."

2. "[Farina] gets paid on both ends and allegedly gets kickbacks."

3. "Basically, people now pay $1,000 to have a consult with her so she can suggest one of these surgeons from "Beauty Brokers' Little Black Book of surgeons."

4. "Lots of surgeons I know have STORIES, and tons of my followers have sent in stories of [Farina] being super rude, canceling all the time and being late, not helpful, and having a hard time getting their money back if she messes up or doesn't provide the services promised."

5. "[Farina] is a bad person/bad businesswoman."

6. "She scams a lot of people and had a surgical procedure that she owed money for but never paid it."

(SAC ¶¶ 36–41; 63–66; 92.)

Defendant argues that these statements cannot constitute actionable defamation because they are either true statements or are non-actionable statements of opinion. First, Plaintiffs contend that Defendant's statement that Farina was "just a dental hygienist" is defamatory because Farina is a "plastic surgery consultant." However, "the truth of the statement is a complete defense to a defamation action." *Read v. Profeta*, 397 F.Supp.3d 597, 651 (D.N.J. 2019) (quoting *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1071 (N.J. Super. Ct. App. Div. 2000)); *Kenny*, 15 A.3d at 310. Here, Plaintiffs do not dispute the fact that Farina previously worked as a dental hygienist. Moreover, Plaintiffs fail to demonstrate how highlighting Farina's background as a dental hygienist subjects Farina "to contempt or ridicule," and "harms [her] reputation by lowering the community's estimation of [her] or by deterring others from wanting to associate or deal with [her]." *Kenny*, 15 A.3d at 310. Accordingly, such statement is not defamatory.

Next, this Court considers the second alleged defamatory statement in two parts: (1) Farina "gets paid on both ends" and (2) "allegedly gets kickbacks." Truth may be asserted as a defense even when the allegedly defamatory statement "is not perfectly accurate." *Read*, 397 F. Supp. 3d at 651 (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1114 (N.J. 2009)). The law of defamation "overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.") (quotations and citation omitted). Here, the statement that Plaintiffs "gets paid on both ends" accuses Plaintiffs of receiving payments from doctors within their referral network. In the Amended Complaint,

Plaintiffs admit to a previous membership program where surgeons paid a membership fee to join Plaintiffs' referral network.  Plaintiffs also admit to experimenting with a fee-splitting arrangement involving surgeons in their referral network and receiving gifts from surgeons.  This Court finds that the assertion that Plaintiffs received payments from doctors, albeit in the past, is not "perfectly" accurate since doctors did not pay Plaintiffs directly for referrals but rather, they paid Plaintiffs to join their referral network.  Nonetheless, based on Plaintiffs' own admissions, the "gist" of the statement, i.e., Plaintiffs have received payments from doctors, is substantially true.  Moreover, this Court is not convinced by Plaintiffs' argument that the use of present tense terms meaningfully alters the truth of the statement.  Accordingly, the statement that Farina "gets paid on both ends" is not actionable.

On the other hand, "a reasonable person of ordinary intelligence" may read the statement that Farina "allegedly gets kickbacks" as accusing Plaintiffs of a criminal offense or other illicit behavior. [1]  *See Lynch v. New Jersey Educ. Ass'n*, 735 A.2d 1129, 1136 (N.J. 1999) ("Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give to it").  However, "a statement's meaning can be affected by its context." *Read*, 397 F.Supp.3d at 651; *see also Lynch*, 735 A.2d at 1137 ("[t]he context of a statement can affect significantly its fair and natural meaning").  Here, Plaintiffs and Defendant use the term "kickback" when referring to payments from surgeons for referrals and not in reference to any criminal or illegal conduct.  (*See* SAC ¶¶ 48–49.)  Accordingly, based on Plaintiffs and Defendant's use of the term, the context of the

---

[1] While Plaintiff's rely on the Cambridge Dictionary that defines the term "kickback" as "an amount of money that is paid illegally in exchange for secret help or work," the Merriam–Webster Dictionary defines "kickback" as "a return of a part of a sum received often because of a confidential agreement or coercion." *Cambridge Dictionary*, https://dictionary.cambridge.org/dictionary/english/kickback;   *Merriam–Webster   Dictionary   Online*, https://www.merriam-webster.com/dictionary/kickback. Last visited on May 29, 2026.

statement lends itself to an understanding that "kickback" is another term for receiving payments from surgeons for referrals, like the phrase Plaintiffs "gets paid on both ends."  Thus, based on Plaintiffs' admission to previously accepting membership fees from surgeons to join their referral network, the substance of the statement is substantially true and therefore, not actionable.

The third alleged statement states that "people now pay $1,000 to have a consult with her so she can suggest one of these surgeons from Beauty Brokers' Little Black Book of surgeons." Plaintiffs claim that this statement is defamatory because it misrepresents their fee as higher than it is and that their network of doctors is smaller than in reality.  However, such a statement does not rise to the level of contempt or ridicule, or of such nature to harm Plaintiff's reputation in the community.  Thus, a defamation claim based on this statement is not actionable.

Lastly, the remaining statements can also be classified as the opinions of Defendant.  Under New Jersey law, a pure opinion is "one that is based on stated facts or facts that are known to the parties or assumed by them to exist," while a "mixed opinion" is one "not based on facts that are stated or assumed by the parties to exist." *Lynch v. N.J. Educ. Assoc.*, 735 A.2d 1129, 1137 (N.J. 1999).  Importantly, if a statement could be construed as either fact or opinion, this Court must construe it as an opinion. *Id.*  The fourth alleged defamatory statement regarding surgeons and Defendant's followers sharing stories about Farina is an opinion because Defendant states the facts upon which the opinion is based.  The fifth alleged defamatory statement that "Farina is a bad person/businesswoman" is not actionable because whether someone is a bad person or bad businesswoman is an opinion and cannot be readily verified. *See Read v. Profeta*, 397 F.Supp.3d 597, 651 (D.N.J. 2019) ("[O]nly verifiable statements can be defamatory").  The sixth alleged defamatory statement states that Farina is a "scammer" and did not pay for a surgical procedure. Yet, whether Farina is a "scammer" is offensive but not verifiable.  Furthermore, the statement

that Farina did not pay for a surgical procedure does not rise to a level of contempt or ridicule to harm Plaintiff's reputation in the community.

Additionally, the context of the statements further demonstrates that they are nonactionable opinions. Here, Defendant's statements were delivered by a social media influencer on Instagram. Because Instagram is a public forum "where a reasonable reader will expect to find many more opinions than facts," this context strongly signals to readers that the posts merely reflect the publisher's opinions. *See Broughty v. Bouzy*, No. 22-6458, 2023 WL 5013654, at *5 (D.N.J. Aug. 7, 2023) (stating that Twitter is a public forum where posts are likely more statements of opinion rather than fact); *see also Jevremovic v. Courville*, No. CV 22-4969, 2023 WL 5127332, at *5 (D.N.J. Aug. 10, 2023) (considering the context of the statements in light of the fact that the statements were made on Instagram, a forum that "welcomes opinions and candor"); *Sciore v. Phung*, No. 19-13775, 2022 WL 950261, at *6 (D.N.J. Mar. 30, 2022) (finding that Yelp reviews are more likely the writer's opinion rather than fact); *Konowicz v. Carr*, No. 15-6913, 2019 WL 13402853, at *5 (D.N.J. July 31, 2019) (holding that the fact that the statements were made in the comments section of a Facebook post suggested that the statements were opinions and not defamatory).

Accordingly, Plaintiffs' defamation claim fails because the alleged defamatory statements are substantially true statements or are non-actionable statements of opinion.[2] Therefore, Count I is dismissed.

### ii.   False Light (Count II)

Under New Jersey law, a false light claim has two elements: (1) that the plaintiff was placed in a false light that "would be highly offensive to a reasonable person," and (2) the defendant "had

---

[2] In determining that the alleged defamatory statements are not actionable, this Court need not address Plaintiffs' republication arguments.

knowledge of or acted in reckless disregard as to the falsity of" the statement.  *Verdu v. Im*, No. 19-16394, 2024 WL 358045, at *7 (D.N.J. Jan. 31, 2024).  Under New Jersey law, the second prong of a false-light claim "parallels the requirements of the actual-malice standard in First Amendment jurisprudence and [New Jersey] common law."  *Durando v. Nutley Sun*, 37 A.3d 449, 458 (N.J. 2012); *see also Soobzokov v. Lichtblau*, 664 F. App'x 163, 169 (3d Cir. 2016) ("New Jersey extends the same constitutional protection to false light ... claims as it does to defamation claims.") (citing *Durando*, 37 A.3d at 458, and *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1129 (N.J. 1989)).

"Actual malice has 'nothing to do with hostility or ill will; rather it concerns [a] publisher's 'state of knowledge of the falsity of what he published, not at all upon his motivation in publishing it.'" *DeAngelis v. Hill*, 847 A.2d 1261, 1270 (N.J. 2004) (quoting *Lawrence v. Bauer Pub. & Printing Ltd.*, 446 A.2d 469, 477 (N.J. 1982)).  The existence of actual malice depends on whether Defendant published the statement knowing that it was false or with a reckless disregard for its truth.  *See id.* at 18 (citing *Lynch v. New Jersey Educ. Ass'n*, 735 A.2d 1129, 1136–1137 (N.J. 1999)).  It is a subjective standard that does not involve consideration of whether a reasonable person would have or should have known the statement was false.  *See DeAngelis*, 847 A.2d at 1268.

Here, Plaintiffs contend that because Defendant claims to conduct pre-publication verification and fact-checking, then Defendant knew that her Instagram posts contained false information.  Plaintiffs further assert that Defendant was aware of the falsity of her posts because of Plaintiffs' previous Instagram posts denying that Farina received "kickbacks" from surgeons, which Plaintiffs allege that Defendant must have seen.  However, Plaintiffs' conclusory allegations

are insufficient to support an inference of actual malice.[3]  Plaintiffs do not point to any facts, circumstantial or direct, that demonstrate Defendant entertained any serious doubts about the veracity of the statements she made.  Considering the public controversy regarding Plaintiffs' alleged compensation from surgeons, the mere fact that Plaintiffs denied receiving kickbacks does not, by itself, demonstrate that Defendant had knowledge of falsity or serious doubts about the truth when making the alleged statements.  Accordingly, Count II is dismissed.

### iii.    Trade Libel (Count V)

To make out a trade libel claim, a plaintiff must establish: "(1) publication; (2) with malice; (3) of false allegations concerning its property, product or business; and (4) special damages, i.e., pecuniary harm." *Internet Prods. LLC v. LLJ Enters., Inc.*, No. 18-15421, 2019 WL 5692010, at *6 (D.N.J. Nov. 4, 2019).  Under New Jersey law, defamation and trade libel are similar causes of actions and are "thus, subject to the same privileges, or limitations, that render certain statements nonactionable." *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 244–45 (3d Cir. 2023) (citing *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 516 A.2d 220, 224-25 (N.J. 1986)).  As such, Plaintiffs' trade libel claims fail because this Court determined that the statements at issue are either true statements or nonactionable opinions.  *See Id.* (dismissing trade libel claims because the statements were nonactionable opinions).  Additionally, as previously discussed, Plaintiffs fail to sufficiently plead actual malice and therefore, Plaintiffs trade libel claims also fail for that reason as well.  Therefore, Count V is dismissed.

### B. Tortious Interference with Prospective Business Relations (Count III)

Plaintiffs fail to plead facts sufficient to support their claim for tortious interference with prospective business relations.  Under New Jersey law, to prove a claim for tortious interference

---

[3] For this reason, even if the alleged statements were actionable defamation, Plaintiffs' defamation claims suffer from their failure to adequately plead actual malice.

with a prospective business relation, a plaintiff must show that it "had a reasonable expectation of economic advantage that was lost as a direct result of defendant's malicious interference, and that it suffered losses thereby." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (2001) (citing *Baldasarre v. Butler*, 625 A.2d 458, 465 (1993)).

Here, Plaintiffs fail to allege the existence of any lost prospective economic benefit that they would have retained "but for" Defendant's alleged interference. Plaintiffs claim that sixteen customers cancelled their appointments with Plaintiffs in the three weeks following Defendant's November 2024 post. (SAC ¶¶ 77–78.) In comparison, Plaintiffs would normally only receive one cancellation per week. (*Id.*) Thus, Plaintiffs state that the sixteen cancellations were in response to the alleged defamatory statements by Defendant. (*Id.*) However, Plaintiffs allegations attributing the cancellations to Defendant's conduct are speculative at best and insufficient to plausibly establish causation between the cancellations and the November 2024 post. Therefore, even when drawing all reasonable inferences in Plaintiffs' favor, the allegations here do not support a plausible theory that Defendant tortiously interfered with Plaintiffs' prospective business relations. Accordingly, Count III is dismissed.

**C. False Advertising and Unfair Competition in Violation of the Lanham Act (Count IV)**

Plaintiffs assert claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Claims brought under the Lanham Act to recover damages for unfair competition and false advertising "are measured by identical standards." *Cartier Int'l A.G. v. Daniel Markus, Inc.*, No. 10-01459, 2013 WL 5567150, at *11 (D.N.J. Oct. 8, 2013); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014) (noting "the Lanham Act treats false advertising as a form of unfair competition"); *Diversified Indus., Inc. v. Vinyl Trends*,

Inc., No. 13-06194, 2016 WL 6897783, at *4, *5 (D.N.J. Nov. 22, 2016) (noting unfair competition claims under the Lanham Act encompass false advertising claims).

To state a claim for false advertising under the Lanham Act, a plaintiff must allege that: (1) "the defendant has made false or misleading statements as to his own product [or another's];" (2) "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;" (3) "that the deception is material in that it is likely to influence purchasing decisions;" (4) "that the advertised goods traveled in interstate commerce;" and (5) "that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014).

Whether a statement is "commercial advertising or promotion" is a threshold issue to determine whether a statement is actionable under the Act. Although the Lanham Act does not define "commercial advertising or promotion," a statement is actionable "commercial advertising or promotion" if it is "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry." *Tower Sys., Inc. v. Fish On Sports Corp.*, No. 23-11931, 2026 WL 958556, at *3 (D.N.J. Apr. 8, 2026) (citing *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 456 (D.N.J. 2009)).

Categorization of speech is a question of law. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008). To determine whether speech is commercial, courts consider the following factors: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *NY Mach. Inc. v. Korean Cleaners Monthly*, No. 17–12269, 2018 WL 2455926, at *3 (D.N.J. May 31,

12

2018)(citing *U.S. Healthcare, Inc., v. Blue Cross of Greater Phila.*, 898 F. 2d 914, 933 (3d Cir. 1990)). "An affirmative answer to all three questions provides 'strong support' for the conclusion that the speech is commercial." *U.S. Healthcare, Inc.*, 898 F.2d at 933 (internal citation omitted). This inquiry involves making "a commonsense distinction between speech proposing a commercial transaction and other varieties of speech." *Facenda*, 542 F.3d at 1017 (internal citation omitted).

Here, Plaintiffs argue for an overly broad definition of commercial speech, essentially stating that any criticism from a purported competitor must be commercial speech.[4] While critical of Plaintiffs, the alleged misleading statements do not advocate for the reader to purchase a particular product or service over another. In fact, none of the alleged statements explicitly or implicitly refer to the alleged similar service offered by Defendant. *See Crash Proof Ret., LLC v. Price*, 533 F. Supp. 3d 227, 231 (E.D. Pa. 2021) (stating that speech that makes no reference to defendant's product or service is not commercial speech under the Lanham Act). The statements themselves can reasonably be construed as mere personal attacks against Farina. Accordingly, this Court finds that the alleged misleading statements do not constitute commercial speech. Therefore, Plaintiffs fail to sufficiently allege a claim for false advertising under the Lanham Act. Accordingly, Count IV is dismissed.

### D. New Jersey's Uniform Public Expression Protection Act

Strategic lawsuits against public participation ("SLAPPs") are lawsuits filed to punish, silence, and intimidate defendants exercising their First Amendment rights. *Paucek v. Shaulis*, 349 F.R.D. 498, 509 (D.N.J. 2025). Defendant seeks a determination that the action is subject to New Jersey's anti-SLAPP statute, UPEPA. New Jersey's UPEPA is applicable in federal court to

---

[4] Whether Plaintiffs and Defendant are truly competitors is a question of fact that is not appropriate for this Court to resolve at this stage.

the extent that it affords fees, costs, and expenses to a prevailing movant who successfully dismisses a SLAPP suit under Federal Rule 12 or Federal Rule 56. *Id.* at 519.

For UPEPA to apply, the challenged speech must pertain to an area of public concern, triggering the additional element of actual malice in a defamation consideration. New Jersey Stat. Ann. § 2A:53A-50(b)(3). This Court previously determined that the actual malice standard applies because Farina is a limited purpose public figure and the challenged statements related to a particular public controversy within the cosmetic surgery industry. (*See* D.E. 37.) However, Plaintiffs argue that UPEPA is inapplicable because the challenged statements constitute commercial speech. *See* New Jersey Stat. Ann. § 2A:53A-50(c)(3) (stating that the statute does not apply to a cause of action asserted "against a person primarily engaged in the business of selling or leasing goods or services if the cause of action arises out of a communication related to the person's sale or lease of the goods or services.") Although Plaintiffs correctly argue that UPEPA is inapplicable to commercial speech, this Court found that the challenged statements do not constitute commercial speech. The challenged statements do not refer to any services offered by Defendant and thus the cause of action does not arise out of a communication related to Defendant's sale or lease of goods or services.

Accordingly, the protections afforded by UPEPA apply to this matter and Defendant may seek fees, costs, and expenses upon filing a separate application. *See Paucek*, 349 F.R.D. at 519.

**E. Dismissal with Prejudice**

Based on this Court's analysis of the alleged defamatory statements, this Court finds that further amendment of the complaint would be futile.[5] *See Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (stating that amendment "is futile if the

---

[5] In this Court's September 29, 2025 Opinion, this Court declined to address whether the alleged statements were defamatory because Plaintiffs failed to sufficiently plead actual malice.

amended complaint would fail to state a claim for relief under Rule 12(b)(6).")  Here, this Court found that the alleged statements do not constitute actionable defamation or commercial speech. Accordingly, Plaintiffs cannot save their claims for defamation, false light, trade libel, and false advertising/unfair competition, which are based on these statements.  Nor would amendment save Plaintiffs' claims for tortious interference with prospective business relations as Plaintiffs have again failed to adequately plead any damages resulting from Defendant's conduct.  Therefore, because amendment would be futile, the dismissal will be with prejudice.  *See Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.")

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED WITH PREJUDICE**.  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     André M. Espinosa, U.S.M.J.
        Parties

15